## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

NICKEY A. LANDOR                                        CIVIL ACTION

VERSUS                                                 NO.  13-5515

N. BURL CAIN, WARDEN                                   SECTION "E"(2)

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.   STATE COURT PROCEDURAL BACKGROUND

The petitioner, Nickey A. Landor, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On January 10, 2007, Landor was indicted by a grand jury in St. Tammany Parish for the second degree murder of Albert Marshall.[3]  The Louisiana First Circuit Court of Appeal summarized the facts of the case as determined at trial as follows:

> On the morning of October 4, 2006, the defendant got a ride home from Candy Dunnaway, a relative of his.  The defendant lived in a mobile home with his mother on East Orleans Street in Lacombe.  The night before, the defendant had slept at a friend's house while Albert Marshall and his girlfriend, Luciana Starks, slept at the defendant's house.  Lacretia Chapman, an adopted child of the defendant's great aunt, also slept at the defendant's house that night.  The defendant knew Luciana for many years, but knew Albert for only a few months.
>
> When the defendant arrived at his house with Candy on October 4, Albert and Luciana had already left.  Shortly thereafter, Luciana drove up.  Candy left her car at the defendant's house and rode with Luciana to Brandon Pierre's house, which was about one-half mile away.  Sometime around noon, Luciana, Candy, and Albert returned to the defendant's house in Luciana's car.  Albert, who was driving, parked sideways across the defendant's driveway, blocking Candy's car from easy egress.
>
> Candy got into her car preparing to leave.  The defendant came outside to talk with her.  The defendant left the passenger door opened.  Albert approached the defendant, and the two began arguing over money.  The defendant got out of Candy's car and continued to argue with Albert.  Albert went to Luciana's car and retrieved a 9mm semi-automatic pistol.  At this point, the witnesses gave varying versions of the sequence of events, but the consensus was that the defendant grabbed for the gun and knocked it out of Albert's hand.  The two of them went to the ground wrestling over control of the gun.  The defendant grabbed the gun.  They both stood up, and the defendant shot Albert twice, killing him.  Shortly thereafter, the defendant fled with the gun through the woods.  Several hours later, the defendant turned himself in, along with the gun, to the police.

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 13, Indictment, 1/10/07; Minute Entry, 1/10/07.

Dr. Michael Defatta, a forensic pathologist who performed the autopsy on Albert, testified at trial that Albert was shot in his right leg and his left upper chest. Neither bullet exited Albert's body. The shot to Albert's leg shattered his femur. This shot was not immediately fatal. However, Albert would not have been able to stand up. According to Dr. Defatta, the leg shot "would have dropped the victim right there." The bullet to Albert's chest went through the lower part of his left lung and rested in the plural cavity. The direction of the wound was downward and left to right. Albert did not have any defensive wounds, or fresh burns or cuts. Dr. Defatta could not tell which of the shots were fired first. The immediate cause of death was exsanguination, resulting from the gunshot wound to the lung in combination with the gunshot wound to the leg. Based on stippling around the chest wound, Dr. Defatta estimated the range from which the gun was fired was from one foot to about three-and-one-half feet. It was his opinion, however, that, regarding the chest wound, the gun was closer to the one-foot range because there was a very tight stippling pattern around the wound. Dr. Defatta could not estimate how far away the gun was when the leg shot was fired because there was no stippling or soot around the leg wound. Dr. Defatta noted that Albert was wearing denim jeans, which can mask gunpowder flakes and soot from sticking on the skin. Therefore, the distance the gun was from the leg when it was fired was indeterminate.

At the scene where Albert was killed, Albert was found face down in the driveway. His body did not appear to have been moved. Police officers found two 9mm casings in the grass and one live 9mm round in the driveway. Also, a third casing was found across the street. A tire iron was found in the grass near the two casings in the grass. No blood or fingerprints were found on the tire iron. The defendant's blood was found on the gun. The gun the defendant gave the police when he turned himself in was a Ruger P89 9mm semi-automatic pistol.

Candy, Luciana, and the defendant all testified at trial. Following his arrest, the defendant gave a taped statement to the police. The statement was played for the jury at trial. Each of these witnesses provided a somewhat different account of the events that transpired the day Albert was killed.

Candy testified that she picked up the defendant and dropped him off at home on the morning of October 4. Shortly thereafter, Luciana pulled up in her car. The defendant gave Luciana Albert's gun, which Albert was allegedly missing. Candy and Luciana then left in Luciana's car. Later that day, Candy, Luciana, and Albert returned in Luciana's car to the defendant's house. Albert was driving. Candy got in her own car, and the defendant got in Candy's car on the front passenger side. Luciana did not get in Candy's car because Luciana was going to ride in her own car with Albert. Albert and the defendant began arguing over money and a demand for an apology. Candy could not remember who wanted the money or the apology. The defendant got out of Candy's car, and the defendant and Albert continued to argue near the back of Candy's car. Albert walked to Luciana's car. Luciana grabbed the gun and tried to give it to Candy, but Candy refused. Albert struggled with Luciana and choked her to get the gun. Albert hit the defendant on the head with the gun.

Candy thought that prior to the defendant being hit, the gun went off, but the bullet missed the defendant. Albert and the defendant wrestled over the gun, and the gun flew to the ground. They both went to the ground reaching for the gun. The defendant grabbed the gun. Candy thought the defendant shot Albert in the leg. However, she did not see the shot fired. According to Candy, during the altercation between Albert and the defendant, Candy was trying to leave in her car. However, since Luciana's car was blocking the driveway, Candy was moving Luciana's car out of the way so that she could move her own car. According to Candy, she looked up only twice during the fight. She remembered seeing the defendant with the gun, but did not remember seeing Albert. Candy testified she heard one shot when the defendant got hit over the head and another shot when she was trying to move the car. Candy also testified that she did not recall seeing the defendant with a tire iron in his hand.

Luciana testified that when she and Albert awoke at the defendant's house on the morning of October 4, Albert said his gun and money were gone. The defendant was not there, either. Albert's probation officer was looking for him. Sometime during the day, Luciana went to the defendant's house, and the defendant got Albert's gun from the trunk of his (defendant's) car. Luciana took the gun and put it in her car. Later that same day, when Luciana, Candy, and Albert went to the defendant's house, Albert told the defendant that he wanted his money. The defendant wanted an apology from Albert. As they continued to argue, the defendant pulled out a tire iron from his purse.[4] Albert went to Luciana's car to grab his gun. Luciana grabbed the gun first, but Albert choked her and got the gun from her. Albert shot at the defendant, but missed him. The defendant knocked the gun out of Albert's hand. The defendant picked up the gun and shot Albert once. Albert fell to the ground. She did not know where Albert was shot. The defendant tried to shoot again, but the gun failed to fire. The defendant pulled the slide back on the gun and shot Albert a second time. Luciana did not remember who hit whom with the gun. She also testified she did not remember seeing Albert hit the defendant with the gun. Luciana also stated that, when they all returned to the defendant's house, Luciana got into Candy's car because she was going to ride with Candy, and Albert was going to take Luciana's car. Luciana also stated that the defendant never sat in Candy's car, but only leaned in the car while talking to Candy. Nevertheless, according to Luciana, Luciana got into the back seat of Candy's car when only she and Candy would be riding in the car. Luciana also testified that when she and Candy went to Brandon's house on the morning of October 4, she, Candy, Brandon, and Albert smoked marijuana. Brandon testified at trial that he did not smoke marijuana that day. Dr. Defatta testified that Albert's blood screen for alcohol and drugs was negative.

---

[4] "The defendant is a homosexual who lives as a woman in his mind."

Detectives Alvin Hotard and Lewis Sanders, both with the St. Tammany Parish Sheriff's Office, interviewed the defendant following his arrest. The defendant's interview was videotaped. The defendant's version of the events was as follows. The defendant did not sleep at his house on October 3, the night Albert and Luciana slept over there, because the defendant knew Albert was recently arrested. Candy picked up the defendant at his friend's house on the morning of October 4 and brought him home. Luciana pulled up shortly thereafter and she and Candy went to Brandon's house in Luciana's car. A few hours later, Luciana and Candy returned with Albert to the defendant's house. Albert told the defendant he wanted the $20 back he gave him the previous night. The defendant explained that he had spent that $20 on food he purchased for Albert. However, Albert insisted on getting his money back, and the argument between them became heated. Albert went to Luciana's car to get his gun, but Luciana grabbed the gun. Albert forced the gun from Luciana and shot at the defendant. The defendant was not hit. Albert approached the defendant and hit him in the head with the gun. The defendant grabbed for the gun, and they struggled for sole possession of the gun. During the scuffle, the gun went off, and Albert was struck in his leg. The gun then went off a second time, and Albert was again struck. According to the defendant, he was able to get the gun turned toward Albert while Albert was still holding the gun. As such, Albert pulled the trigger for both shots. The defendant also stated that, after the second shot, Albert was still staggering. Following the shooting, the defendant went back into his house to get his cigarettes. When the defendant walked back out, Albert was still standing. Afraid, the defendant ran away with the gun. When the defendant was asked during the interview when he had the tire iron in his hand, the defendant replied he had used a tire iron on his car two days prior to the incident. When asked what he did with the tire iron on the day of the shooting, the defendant said he picked up the tire iron and brought it to the front yard, but never got around to putting it in the trunk of his car because the phone rang.

At trial, the defendant testified that he had convictions for writing bad checks, aggravated battery, and distribution of cocaine. Since the defendant was on parole, and Albert's probation officer was looking for Albert, the defendant did not want Albert sleeping at his house on October 3. Regardless, the defendant let Albert and Luciana sleep at his house, while he (defendant) slept at a friend's house. The defendant told Albert that he could not have guns in his house, so Albert put his gun in the trunk of the defendant's car. About 4:00 a.m. on October 4, the defendant went back to his house, where he found Albert and Lacretia having sex in his bed. Angered, the defendant told them that by the time he returned in the morning, they had to be gone. On October 4 about 9:00 a.m., the defendant called his mother from his friend's house. The defendant's mother told him that Albert was looking for him with a gun. After Candy brought the defendant home, Luciana stopped by and got Albert's gun from the trunk of the defendant's car. Luciana and Candy then went to Brandon's house. A few hours later, Luciana and Candy returned to the defendant's house with Albert. Candy got in her car, and the defendant sat in the front-passenger

seat of Candy's car.  Luciana was in the back seat of Candy's car.  While Candy and the defendant were talking, Luciana told the defendant that Albert needed $20.  The defendant said Albert was not getting $20 from him.  Albert approached the defendant and told him they needed to talk.  The defendant told Albert he did not need to talk to him about anything.  Albert cursed at the defendant, and the defendant told him to get out of his yard and to not come back.  According to the defendant's testimony, Albert said, "I got something for you," and went to Luciana's car.  Before Albert could get his gun, Luciana had gotten out of Candy's car, ran to her car, and grabbed the gun first.  Luciana tried to hand the gun to Candy, to no avail.  Albert slapped and choked Luciana and got the gun from her.  According to the defendant, Albert approached him with the gun and said, "I told you I had something for you bitch."  As the defendant turned to jump through Candy's car, Albert fired a shot at the defendant but missed him.  Albert then walked up to the defendant and put the gun to the defendant's head.  Albert pulled the trigger, but the gun jammed.  Albert hit the defendant on the head with the gun.  They began fighting over the gun, and the gun fell to the ground.  They both rolled around on the ground trying to get the gun.  The defendant grabbed the gun, and they both stood up.  The defendant told Albert to stop, but Albert moved toward him and told the defendant he would have to kill him.  The defendant pulled the trigger, and the gun went "pow, pow."  The defendant testified that he was not trying to kill Albert and that if he wanted to kill him, he could have shot him in the heart, head, or chest, or he could have unloaded the gun on him.  After the shooting, the defendant ran into the woods with the gun.  The defendant threw the gun in a ditch and went to an abandoned house where he fell asleep.  When he awoke, he walked to the church, borrowed someone's cell phone, and called his mother.  His mother retrieved the gun from the ditch.  Later that day, the defendant turned himself in at Books-a-Million, and his mother gave the gun to Detective Hotard.

On cross-examination, the defendant admitted that he cleared a round from the gun, i.e., pulled the slide back, when he shot Albert.  However, it is not clear from the defendant's testimony if he cleared a round before the first shot or the second shot.  Also on cross-examination, the defendant agreed that he had told the detectives during his interview that he had never shot a gun in his life.  Moments later, the defendant testified he used to go hunting with guns.  When asked to explain this, the defendant testified that he meant he had never shot a gun at a human being before.

Several witnesses for the defense testified.  Megan Alfonso testified that her boyfriend was Bernard Landor, the defendant's nephew.  On the morning of October 4, Megan was with Bernard when Albert and Luciana came by to talk to her.  Albert told Bernard, "I am going to kill your ——--- f----- aunt, uncle, whoever the f--- he is."  Bernard called his grandmother (the defendant's mother) and told her what Albert said.

Brandon Pierre testified at trial that Luciana told him Albert was upset because the defendant stole Albert's money and gun.  When Brandon spoke to

> Albert, Albert told him he was going to f--- the defendant up. According to Brandon, Albert never threatened to kill the defendant. At the time of the trial, Brandon was in jail for possession with intent to distribute cocaine.
>
> Scott Gardner, St. Tammany Parish Assistant District Attorney, testified at trial that, while he was briefly filling in for the prosecutor on this case, he met with Brandon Pierre. Mr. Gardner took notes during his conversation with Brandon. According to Mr. Gardner, Brandon told him that hours before Albert was shot and killed, Albert said the defendant had taken a gun and money from him, he was angry with the defendant, and that he intended to kill the defendant. Later, however, Albert got his gun back from the defendant. Thus, Albert was less angry, but he still intended to physically assault the defendant when he saw him. Brandon believed that Albert no longer wanted to kill the defendant.

(footnote in original) State v. Landor, 34 So.3d 1166 (La. App. 1st Cir. 2010) (Table); State v. Landor, No. 2009-KA-1740, 2010 WL 1253370, at *1 (La. App. 1st Cir. Apr. 1, 2010); State Record Volume 6 of 13, Louisiana First Circuit Court of Appeal Opinion, 2009-KA-1740, pp. 2-10, April 1, 2010.

Landor was tried before a jury on May 26 through 28, 2009, and was found guilty of manslaughter.[5] At a hearing on June 18, 2009, the state trial court denied the motions for new trial and for post-verdict judgment of acquittal filed by Landor and his counsel.[6]

---

[5]St. Rec. Vol. 1 of 13, Trial Minutes, 5/26/09; Trial Minutes, 5/27/09; Trial Minutes, 5/28/09; St. Rec. Vol. 3 of 13, Trial Transcript, 5/26/09; St. Rec. Vol. 4 of 13, Trial Transcript (continued), 5/26/09; Trial Transcript, 5/27/09; St. Rec. Vol. 5 of 13, Trial Transcript (continued), 5/27/09; Trial Transcript, 5/28/09.

[6]St. Rec. Vol. 1 of 13, Sentencing Minutes, 6/18/09; St. Rec. Vol. 3 of 13, Motion for Post-Verdict Judgment of Acquittal, 6/3/09; Motion for New Trial, 6/3/09; Pro Se Motion for Post-Verdict Judgment of Acquittal, 6/8/09; Pro Se Supplemental Motion for New Trial, 6/18/09.

After waiver of legal delays, the court also sentenced Landor to serve 25 years in prison at hard labor.[7]

At a hearing held on July 13, 2009, the state trial court found that Landor was a fourth felony offender, vacated the prior sentence, and sentenced him to serve life in prison at hard labor.[8]  The court later denied Landor's motions to reconsider the multiple offender sentence.[9]

On direct appeal to the Louisiana First Circuit, Landor's appointed counsel argued that the evidence was insufficient to support the verdict and the sentencing minute entry did not match the sentence orally imposed by the court.[10]  In his pro se supplemental brief, Landor also challenged the sufficiency of the evidence, the trial court's denial of the motion for post-verdict judgment of acquittal based on insufficient evidence and the trial court's failure to quash the multiple bill.[11]  The Louisiana First Circuit affirmed

---

[7]St. Rec. Vol. 1 of 13, Sentencing Minutes, 6/18/09; St. Rec. Vol. 5 of 13, Sentencing Transcript, 6/18/09.

[8]St. Rec. Vol. 1 of 13, Multiple Bill Hearing Minutes, 7/13/09; St. Rec. Vol. 5 of 13, Multiple Bill Hearing Transcript, 7/13/09; St. Rec. Vol. 3 of 13, Multiple Bill, 5/29/09; Multiple Bill, 5/22/09; Answer and Motion to Quash, 6/3/09; Pro Se Supplemental Response to Multiple Bill, 6/18/09.

[9]St. Rec. Vol. 3 of 13, Motion to Reconsider Sentence, 7/22/09; Trial Court Order, 8/13/09; Motion to Reconsider Sentence (2), 7/22/09; Trial Court Order (2), 8/13/09.

[10]St. Rec. Vol. 8 of 13, Appeal Brief, 2009-KA-1740, 10/28/09.

[11]St. Rec. Vol. 8 of 13, Pro Se Supplemental Appeal Brief, 2009-KA-1740, 2/24/10.

Landor's conviction and sentence on April 1, 2010, finding the claims meritless.[12]  The appellate court also denied his request for rehearing.[13]

On December 17, 2010, the Louisiana Supreme Court denied Landor's subsequent writ application without reasons.[14]  His conviction and sentence became final when the United States Supreme Court denied his application for writ of certiorari on October 3, 2011.[15] Giesberg v. Cockrell, 288 F.3d 268 (5th Cir. 2002) (for purposes of the AEDPA, a state conviction becomes final when a petition for certiorari is denied by the United States Supreme Court), cert. denied, 537 U.S. 1072 (2002); Crutcher v. Cockrell, 301 F.3d 656 (5th Cir. 2002); State v. Hoffman, 768 So.2d 592 (La.) (conviction not final until application for writ of certiorari to U.S. Supreme Court is denied), cert. denied, sub nom, Hoffman v. Louisiana, 531 U.S. 946 (2000).

---

[12]State v. Landor, 34 So.3d at 1166; State v. Landor, 2010 WL 1253370, at *1; St. Rec. Vol. 6 of 13, 1st Cir. Opinion, 2009-KA-1740, 4/1/10.

[13]St. Rec. Vol. 8 of 13, 1st Cir. Order, 2009-KA-1740, 4/26/10; Application for Rehearing, 2009-KA-1740, 4/16/10; Pro Se Application for Rehearing, 2009-KA-1740, 4/15/10.

[14]State v. Landor, 51 So.3d 18 (La. 2010); St. Rec. Vol. 6 of 13, La. S. Ct. Order, 2010-K-1230, 12/17/10; St. Rec. Vol. 7 of 13, Copy of La. S. Ct. Writ Application, dated 5/26/10. In that application, Landor challenged the lower courts' failure to consider the entire definition of justifiable homicide and the sufficiency of the evidence.

[15]Landor v. Louisiana, __ U.S. __, 132 S. Ct. 302 (2011); St. Rec. Suppl. Vol. 1 of 1, U.S. Supreme Court Writ Application, dated 5/6/11.

In the meantime, on January 18, 2011, Landor submitted to the state trial court a motion to correct his sentence to remove the hard labor designation.[16]  The court denied the motion without stated reasons on January 31, 2011.[17]  The Louisiana First Circuit denied Landor's related writ application on June 7, 2011.[18]  The Louisiana Supreme Court denied his subsequent writ application without reasons on April 9, 2012.[19]

On December 12, 2011, Landor submitted to the state trial court an application for post-conviction relief asserting the following claims:[20] (1) He was denied due process and equal protection by prosecutorial tactics.  (2) He was denied effective assistance of counsel when (a) appellate counsel failed to argue improper prosecutorial tactics on direct appeal, and (b) trial counsel failed to (i) assist Landor with pro se motions, (ii) file a motion to quash the defective indictment, (iii) file a motion to quash because the indictment was not returned in open court, (iv) appear at the initial arraignment, (v) file certain motions, (vi) call expert witnesses, (vii) provide Landor with his file after

---

[16]St. Rec. Vol. 6 of 13, Motion to Correct Illegal Sentence, 1/25/11 (dated 1/18/11).

[17]St. Rec. Vol. 6 of 13, Trial Court Order, 1/31/11.  The record also contains a copy of a motion to correct the sentence which was filed on May 11, 2011.  St. Rec. Vol. 13 of 13, Motion to Correct Illegal Sentence, 5/11/11.  The record does not reflect a disposition for this motion.

[18]St. Rec. Vol. 6 of 13, 1st Cir. Order, 2011-KW-0314, 6/7/11; St. Rec. Vol. 13 of 13, 1st Cir. Writ Application, 2011-KW-0314, 2/18/11 (dated 2/14/11).

[19]State ex rel. Landor v. State, 85 So.3d 138 (La. 2012); St. Rec. Vol. 13 of 13, La. S. Ct. Order, 2011-KH-1534, 4/9/12; La. S. Ct. Writ Application, 11-KH-1534, 7/12/11 (dated 6/30/11).

[20]St. Rec. Vol. 6 of 13, Uniform Application for Post-Conviction Relief, 12/15/11 (dated 12/12/11); St. Rec. Vol. 7 of 13, Memorandum in Support of Application, dated 12/12/11.

withdrawing, (viii) object to the jury instructions, (ix) investigate before the habitual offender hearing, and (x) object to the State's evidence at the multiple offender hearing. (3) The grand jury indictment was defective in that it failed to include the essential elements of the offense. (4) The state trial court lacked subject matter jurisdiction because of the defective indictment. (5) Trial counsel was ineffective for failing to file a motion to quash the defective indictment. (6) The indictment was not returned by the grand jury in open court. (7) The St. Tammany Parish Sheriff's and District Attorney's Offices violated the "distribution of powers." (8) He was denied access to grand jury transcripts and exhibits. (9) The state trial court denied him a preliminary hearing required by Louisiana law. (10) The state trial court and the district attorney denied him due process by the court's failure to provide reasons for denying his request for records needed to prove his claim of disparate treatment. (11) The state trial court erred in denying his request to stay the proceedings. (12) He was denied effective assistance of counsel when his attorney was not present at the initial arraignment. (13) The State failed to present sufficient evidence to overcome the defense of justifiable homicide. (14) He was placed in double jeopardy at the multiple offender proceedings because the same prior offenses had been used in a previous proceeding against him.

11

After receiving an answer in opposition from the State, the state trial court denied relief on May 17, 2012.[21]  The Louisiana First Circuit denied Landor's subsequent writ application on September 12, 2012.[22] The Louisiana Supreme Court denied Landor's related writ application without stated reasons on March 1, 2013.[23]

## II.   FEDERAL HABEAS PETITION

On August 22, 2013, the clerk of this court filed Landor's petition for federal habeas corpus relief in which he asserts the following claims:[24]

(1)    The state trial court abused its discretion in denying his application for post-conviction relief without an evidentiary hearing.

(2)    The evidence was insufficient to support the verdict.

(3)    The state trial court's sentencing minute entry must be corrected because it does not match the sentence orally imposed by the court.

(4)    The evidence was not sufficient to exclude the defenses of justifiable homicide and self-defense.

---

[21]St. Rec. Vol. 7 of 13, Trial Court Order, 5/17/12; District Attorney's Answer, 1/26/12; Response to Answer, 2/16/12.

[22]St. Rec. Vol. 7 of 13, 1st Cir. Order, 2012-KW-1121, 9/12/12; St. Rec. Vol. 13 of 13, 1st Cir. Writ Application, 2012-KW-1121, 6/27/12 (dated 6/25/12).

[23]State ex rel. Landor v. State, 108 So.3d 1172 (La. 2013); St. Rec. Vol. 9 of 13, La. S. Ct. Order, 2012-KH-2259, 3/1/13; La. S. Ct. Writ Application, 12-KH-2259, 10/18/12 (postal metered 10/15/12, dated 10/10/12).  In this writ application, Landor reurged review of the claims raised on direct appeal and in his application for post-conviction relief.  After this ruling, on May 28, 2013, Landor submitted an application for writ of mandamus to the Louisiana First Circuit suggesting that the state trial court had not ruled on his motion to correct illegal sentence.  St. Rec. Vol. 13 of 13, 1st Cir. Writ Application, 2013-KW-0903, 5/28/13.  The Louisiana First Circuit denied the application as moot on July 1, 2013.

[24]Rec. Doc. No. 1, pp. 34-35, 55-57.  Landor's brief contains claims not made part of his enumerated list and his list of claims does not match the order in which some of the claims are addressed in his brief.

(5)  The trial court erred in denying the motion for post-verdict judgment of acquittal.

(6)  The trial court erred by failing to quash the multiple offender bill.

(7)  The state court of appeal erred by failing to consider two subsections of the statutory definition of justifiable homicide and in misinterpreting the physical evidence in addressing the sufficiency of the evidence.

(8)  The grand jury indictment was defective in that it failed to include the essential elements of the offense.

(9)  The state trial court lacked subject matter jurisdiction because of the defective indictment.

(10)  The indictment was not returned by the grand jury in open court.

(11)  The St. Tammany Parish Sheriff's and District Attorney's Offices violated the "distribution of powers."

(12)  He was denied access to grand jury transcripts and exhibits.

(13)  The state trial court denied him a preliminary hearing required by Louisiana law.

(14)  The state trial court and the district attorney denied him due process when the court failed to provide reasons for denying his request for records needed to prove his claim of disparate treatment.

(15)  The state trial court erred in denying his request to stay the proceedings.

(16)  He was placed in double jeopardy at the multiple offender proceedings because the same prior offenses had been used in a previous proceeding against him.

(17)  He was denied effective assistance of counsel when counsel failed to (a) assist Landor with pro se motions, (b) file a motion to quash the defective indictment, (c) file a motion to quash because the indictment was not returned in open court, (d) appear at the initial arraignment, (e) file certain motions, (f) call expert witnesses, (g) provide Landor with his file after withdrawing, (h) object to the jury instruction, (i) investigate before the multiple offender hearing, and (j) object to the state's evidence at the multiple offender hearing.

(18)  He was denied effective assistance of counsel by counsel's cumulative errors.

The State filed an answer and memorandum in opposition to Landor's petition, arguing that one claim, correction of the sentencing minutes, was not exhausted in the state courts, and that the remaining claims are without merit or fail to state a cognizable federal habeas claim.[25]  Landor replied to the State's opposition, arguing that his state remedies are exhausted and his petition should be reviewed on the merits.[26]

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[27] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Landor's petition, which, for reasons discussed below, is deemed filed in this court on August 19, 2013.[28]

_____

[25]Rec. Doc. Nos. 8, 9.

[26]Rec. Doc. No. 10.

[27]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[28]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  The State concedes and I find that Landor's petition was timely filed and that none of his claims were dismissed in the state courts on the basis of procedural default.

As noted above, the State argues that Landor's claim seeking correction of the sentencing minute entry was not exhausted in the state courts.  However, Landor's state court pleadings reflect that this argument was asserted in the Louisiana First Circuit on direct appeal.  Although he did not immediately pursue further review of this claim, it was also included in his 2013 writ application to the Louisiana Supreme Court.[29] Accordingly, the State's exhaustion defense cannot be accepted.  Even if his arguments might be construed as unexhausted, however, the claims are meritless and may be addressed by this court.  28 U.S.C. § 2254(b)(2).

_____

(2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of this court filed Landor's petition on August 22, 2013, when pauper status was granted. The record reflects that, on August 19, 2013, Landor signed and delivered the petition to prison officials for e-mailing to the court as shown by the prison officials' stamp on Landor's cover letter found at page eight of the pleading.

[29]St. Rec. Vol. 9 of 13, La. S. Ct. Writ Application, 12-KH-2259, pp. xii-xiv, 10/18/12.

15

IV.   <u>STANDARDS OF MERITS REVIEW</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), <u>cert. denied</u>, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir. 2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert. denied</u>, 531 U.S. 849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.    NO STATE POST-CONVICTION HEARING (CLAIM NO. 1)

Landor alleges that the state trial court abused its discretion in denying his application for post-conviction relief without first conducting an evidentiary hearing as provided in La. Code Crim. P. art. 930.[30]

For purposes of federal habeas review, this argument apparently presents a question of law. However, the law is well settled that "infirmities in State habeas proceedings do not constitute grounds for relief in federal court." Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001).  The purpose of federal habeas review is to challenge the petitioner's conviction and detention itself, not to attack the state court post-conviction and collateral proceedings.  Id. at 320; Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); see Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 402-403 (2001) (no constitutional mandate that states provide post-conviction review) (citing Pennsylvania v. Finley, 481 U.S. 551, 557 (1987)).

In addition, to whatever extent, if any, that Landor may intend to request a federal evidentiary hearing, his request must be denied.  As the Supreme Court has noted, the decision to hold an evidentiary hearing is governed by Section 2254(e)(2), which restricts evidentiary hearings to those instances where the claim relies on a new rule of law retroactively applied on collateral review for which the predicate could not have been

---

[30]Rec. Doc. No. 1, pp. 58-59.

previously discovered with due diligence and where the facts would be sufficient to undermine a guilty verdict by clear and convincing evidence. Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1400-01 (2011). The Cullen Court further stated that where these requirements are not met, evidence presented for the first time on federal habeas review may not be considered to address the merits of the claims under Section 2254(d)(1). Id. Thus, federal habeas review is generally limited only to the evidence and the record that was before the state courts that reviewed the claim at issue. Id., 131 S. Ct. at 1400; Blue v. Thaler, 665 F.3d 647, 656 (5th Cir. 2011); Gallow v. Cooper, 505 F. App'x 285, 295-96 (5th Cir. 2012); Thomas v. Thaler, 520 F. App'x 276, 282-83 (5th Cir. 2013).

As discussed below, Landor is not entitled to federal habeas relief on any of his claims based on the record before this court. He has made no showing of entitlement to relief by clear and convincing evidence. He also has not based his claims on any new, retroactive rule of law, as required in Section 2254(e)(2) to grant a federal evidentiary hearing. For all of these reasons, Landor is not entitled to relief on this claim.

VI.    SUFFICIENCY OF THE EVIDENCE (CLAIMS NOS. 2, 4, 5, 7)

Landor asserts several claims challenging the sufficiency of the evidence concerning his defense of justifiable homicide. Landor and his counsel first challenged the sufficiency of the evidence in a motion for post-verdict judgment of acquittal before

his sentencing.  The trial court denied the motion without stated reasons.  Landor and his counsel asserted the same issue on direct appeal to the Louisiana Fourth Circuit.  Relying on the rule established in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979) and related state law, the state appellate court found the arguments meritless.  The appellate court found the evidence sufficient for the jury to determine that Landor had specific intent to kill, as demonstrated by his shooting the gun twice; that Landor did not reasonably believe himself to be in imminent danger once he had control of the gun; and that he became the aggressor when he cocked the gun to take the second shot after the victim had already been hit once.  The court further noted that Landor's flight and disposal of the weapon were inconsistent with a theory of self-defense.  The appellate court found no merit in Landor's claim that the trial court erred by denying his motion for post-verdict judgment of acquittal based on the same arguments.

Landor's similar claims were again rejected as meritless on post-conviction review.  In both instances, the Louisiana Supreme Court subsequently denied relief on these grounds without added reasons.

To the extent Landor claims that the state trial court improperly denied his motion for post-verdict judgment of acquittal under state law, that claim does not warrant federal habeas corpus relief.  A state court's denial of that type of post-trial motion does not violate a federal constitutional right.  <u>Haygood v. Quarterman</u>, 239 F. App'x 39, 42 (5th

Cir. 2007) (citing <u>Dickerson v. Guste</u>, 932 F.2d 1142, 1145 (5th Cir. 1991)). In addition, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." <u>Wilkerson v. Whitley</u>, 16 F.3d 64, 67 (5th Cir.1994) (citation and quotation omitted); <u>see</u> <u>Swarthout v. Cooke</u>, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).

Moreover, Louisiana law concerning review of such a motion is consistent with the constitutional standards required to protect a defendant's rights under <u>Jackson</u>. Under Louisiana law, a post-verdict judgment of acquittal may "be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." La. Code Crim P. art. 821(B). Thus, such a motion is evaluated under a standard virtually identical to insufficient evidence claims under <u>Jackson</u>. <u>State v. Durand</u>, 963 So.2d 1028, 1033 (La. App. 5th Cir. 2007); <u>State v. Jones</u>, 952 So.2d 705, 707 (La. App. 4th Cir. 2006) (citing <u>State v. Thibodeaux</u>, 750 So.2d 916, 926 (La. 1999)); <u>State v. Williams</u>, 891 So.2d 26, 30 (La. App. 4th Cir. 2004) (citing <u>State v. Brown</u>, 620 So.2d 508, 513-514 (La. App. 4th Cir. 1993)).

For purposes of federal habeas review, this court must also evaluate Landor's sufficiency of the evidence claim under the <u>Jackson</u> United States Supreme Court standards. Under <u>Jackson</u>, this court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found

that the essential elements of the crime were proven beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008); Williams v. Cain, 408 F. App'x 817, 821 (5th Cir. 2011).  To determine whether the guilty verdict is adequately supported by the evidence, the court must review the substantive elements of the crime as defined by state law.  Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n.16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  See McDaniel v. Brown, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 F. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial") (quoting Jackson, 443 U.S. at 324).

Review of sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of witnesses, because those determinations are the exclusive province of the jury.  United States v. Young, 107 F. App'x 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993); see Jackson, 443 U.S. at 319 (it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  A reviewing federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.  Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter,

775 F.2d 595, 598 (5th Cir. 1985). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005). In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. Perez, 529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of the Jackson United States Supreme Court precedent.

Though indicted on a charge of second degree murder, the jury found Landor guilty of the lesser offense of manslaughter.[31] Louisiana law defines manslaughter in pertinent part as follows:[32]

> A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an

---

[31]Under Louisiana law, manslaughter is a legislatively authorized lesser responsive verdict to a charge of second degree murder. La. Code Crim. P. art. 814(A)(3).

[32]The relevant portion of the statute was determined based on the charge given to the jury by the state trial court. St. Rec. Vol. 5 of 13, Trial Transcript, pp. 1061-62, 5/28/09.

> average person's blood would have cooled, at the time the offense was committed . . ..

La. Rev. Stat. §14:31(A)(1); State v. Logan, 34 So.3d 528 (La. App. 2d Cir. 2010); State v. Quiambao, 833 So.2d 1103 (La. App. 2d Cir. 2002).

The concepts of "'[s]udden passion' and 'heat of blood' are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them." Logan, 34 So.3d at 535 (citing State v. Lombard, 486 So.2d 106 (La. 1986)); State v. Laird, 30 So.3d 1167 (La. App. 3rd Cir. 2010). Thus, in Louisiana, it is the defendant's burden to prove by a preponderance of the evidence that he acted in "sudden passion" or "heat of blood" for a verdict of manslaughter to be appropriate. State v. Robinson, 754 So.2d 311 (La. App. 2d Cir. 2000).

In this case, Landor does not dispute that the State proved the elements of manslaughter. In fact, he has conceded, as he did in the state courts, that he killed Marshall and had specific intent to do so. As Landor himself stated in his submissions to this court:

> There is no doubt that Petitioner, while acting with a specific intent to kill or inflict great bodily harm, shot and wounded Mr. Marshall that resulted in the homicide.

Record Doc. No. 1-1 at p. 11 (Petitioner's Memorandum in Support). The focus of Landor's challenge to the sufficiency of the evidence is and has been that the State failed

to disprove that he acted in self-defense.  As the state courts repeatedly concluded, however, it was wholly reasonable for the jury to find that Landor did <u>not</u> act in self-defense when he shot <u>twice</u> to kill the disarmed victim.

Louisiana law provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.  La. Rev. Stat. § 14:20(A)(1).  The State had the burden of proving that Landor did not act in self-defense, and the standard of review on federal habeas review under <u>Jackson</u> is whether a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that the homicide was not committed in self-defense or the defense of others.  <u>State v. Lilly</u>, 552 So.2d 1036, 1039 (La. App. 1st Cir. 1989).

In this case, the state court record establishes that the trial evidence did <u>not</u> support a finding of self-defense.  The jury heard testimony, including Landor's, that Landor and the victim, Marshall, argued near Candy Dunnaway's car about an apology and money.[33] At one point, Landor armed himself with a jack handle that he had in his purse.[34]

---

[33]St. Rec. Vol. 4 of 13, Trial Transcript, p. 844 (Candy Dunnaway), 5/27/09; St. Rec. Vol. 5 of 13, Trial Transcript (continued), p. 894 (Luciana Stark), 5/27/09; St. Rec. Vol. 5 of 13, Trial Transcript, p. 969 (Nickey Landor), 5/28/09.

[34]St. Rec. Vol. 4 of 13, Trial Transcript, p. 881 (Stark), 5/27/09; St. Rec. Vol. 5 of 13, Trial Transcript (continued), pp. 894, 896-97 (Stark), 5/27/09.

Marshall then went to Luciana Stark's car to retrieve his gun.[35]  Stark tried to keep the gun away from Marshall and tried to hand it to Dunnaway.[36]  Dunnaway refused to take it from her.  Marshall then retrieved the gun from Stark and approached Landor with it.[37]  Landor and Stark recalled that Marshall shot at Landor but missed.[38]  He then struck Landor in the head with the butt of the gun.[39]  The gun may have discharged at that point.[40]  The two men then wrestled to the ground and the gun fell.[41]  Landor was able to grab the gun.[42]  He stood up and shot Marshall in the leg.[43]  After Marshall fell to the

---

[35]St. Rec. Vol. 4 of 13, Trial Transcript, p. 846 (Dunnaway), p. 881 (Stark), 5/27/09; St. Rec. Vol. 5 of 13, Trial Transcript, p. 969 (Landor), 5/28/09.

[36]Id., pp. 846, 858, 862 (Dunnaway), p. 881 (Stark); St. Rec. Vol. 5 of 13, Trial Transcript, pp. 978-79 (Landor), 5/28/09.

[37]Id., pp. 846-47 (Dunnaway), p. 885 (Stark); St. Rec. Vol. 5 of 13, Trial Transcript (continued), pp. 894-95 (Stark), 5/27/09; St. Rec. Vol. 5 of 13, Trial Transcript, p. 969 (Landor), 5/28/09.

[38]St. Rec. Vol. 5 of 13, Trial Transcript (continued), pp. 894-95 (Stark), 5/27/09; St. Rec. Vol. 5 of 13, Trial Transcript, p. 969 (Landor), 5/28/09.

[39]St. Rec. Vol. 4 of 13, Trial Transcript, pp. 846-47 (Dunnaway), p. 885 (Stark), 5/27/09; St. Rec. Vol. 5 of 13, Trial Transcript (continued), pp. 894-95 (Stark), 5/27/09; St. Rec. Vol. 5 of 13, Trial Transcript, p. 970 (Landor), 5/28/09.

[40]Id., pp. 847, 851, 864-65 (Dunnaway).

[41]Id., pp. 847, 849, 866 (Dunnaway), p. 882 (Stark); St. Rec. Vol. 5 of 13, Trial Transcript (continued), p. 897 (Stark), 5/27/09; St. Rec. Vol. 5 of 13, Trial Transcript, pp. 970-71 (Landor), 5/28/09.

[42]Id., pp. 848, 849 (Dunnaway), p. 882 (Stark); St. Rec. Vol. 5 of 13, Trial Transcript (continued), p. 897 (Stark), 5/27/09; St. Rec. Vol. 5 of 13, Trial Transcript, p. 971 (Landor), 5/28/09.

[43]Id., p. 850 (Dunnaway); St. Rec. Vol. 5 of 13, Trial Transcript (continued), p. 897 (Stark), 5/27/09; St. Rec. Vol. 5 of 13, Trial Transcript, p. 971 (Landor), 5/28/09.

ground, Landor cocked the gun and shot him again.[44]  Landor conceded in his testimony that he shot Marshall <u>twice</u>, claiming that Marshall's aggression scared him and he was afraid that Marshall would hurt him.[45]

In addition, the testimony of Landor and other witnesses established that Landor's actions after the shooting were not indicative of self-defense.  Instead of remaining in the area to explain the situation to police, Landor fled the scene and disposed of the gun.[46] He hid in an abandoned house overnight until he contacted his mother for a ride.[47]  At his instruction, his mother retrieved the gun, and Landor eventually turned himself over to police.[48]

I find that a rational trier of fact, after viewing this evidence in the light most favorable to the prosecution, could easily find beyond a reasonable doubt that the homicide was <u>not</u> committed in self-defense. As the evidence indicated, and as was resolved by the state courts, Landor had taken possession of the weapon he claimed to fear and shot that weapon <u>twice</u> at Marshall, the second time after the first shot had

---

[44]<u>Id.</u>, p. 882 (Stark); St. Rec. Vol. 5 of 13, Trial Transcript (continued), p. 897 (Stark), 5/27/09; St. Rec. Vol. 5 of 13, Trial Transcript, p. 975 (Landor), 5/28/09.

[45]St. Rec. Vol. 5 of 13, Trial Transcript, pp. 971, 996 (Landor), 5/28/09.

[46]<u>Id.</u>, pp. 972-73 (Landor).

[47]<u>Id.</u>, p. 973 (Landor), pp. 1007-08 (Wilamena Ducre).

[48]<u>Id.</u>, p. 973 (Landor), pp. 1007-08 (Ducre).

27

dropped the victim to the ground.  Landor then fled.  He did not stay at the scene to speak

with police, and he did not contact the police to report the matter until the next day when

he learned he was wanted.

I recognize that Landor argues that the state appellate court erred by failing to

consider Subsections (C) and (D) of Louisiana's justifiable homicide statute.  La. Rev.

Stat. § 14:20. These sections provide:

> C.     A person who is not engaged in unlawful activity and who is in a
> place where he or she has a right to be shall have no duty to retreat
> before using deadly force as provided for in this Section, and may
> stand his or her ground and meet force with force.

> D.     No finder of fact shall be permitted to consider the possibility of
> retreat as a factor in determining whether or not the person who used
> deadly force had a reasonable belief that deadly force was
> reasonable and apparently necessary to prevent a violent or forcible
> felony involving life or great bodily harm or to prevent the unlawful
> entry.

Construing his argument broadly, Landor appears to contend that these provisions

prohibited the jury and the state courts from considering his ability to retreat from the

incident once he had the murder weapon in his hands.  These provisions do not appear

to apply to his case, which does not involve the protection of a place or the prevention

of an unlawful entry.

Nevertheless, as discussed above, federal habeas review does not address errors

of state law.  Swarthout, 131 S. Ct. at 861.  "Errors of state law and procedure . . . are not

28

cognizable unless they result in the violation of a federal constitutional right." Lee v. Whitley, No. 93-03791, 1994 WL 395071, at *3 (5th Cir. June 28, 1994) (holding that judge's purported violation of state law was not cognizable in a federal habeas corpus proceeding); Payne v. Whitley, No. 94-30101, 1995 WL 84049, at *2 (5th Cir. Feb. 6, 1995); Odom v. Wheat, No. 09-3028, 2009 WL 3199178, at *6 (E.D. La. Sep. 30, 2009) (order adopting report).  No violation of a federal constitutional right occurred in Landor's case because the evidence was fully sufficient to support the verdict under federal standards.

The state courts' rejection of Landor's insufficient evidence/self-defense claim does not present an unreasonable application of Supreme Court precedent to the facts of this case.  He is not entitled to relief on these claims.

## VII.  CORRECTION OF THE SENTENCING MINUTES (CLAIM NO. 3)

Landor argues that the state trial court's sentencing minutes must be corrected under Louisiana law, because the minutes did not match the sentence orally imposed by the court at the sentencing hearing.  Specifically, the minutes indicated that Landor's sentence was to be served without benefit of parole, probation or suspension of sentence, while that restriction was not voiced by the judge at sentencing.

Landor's counsel raised this issue on direct appeal to the Louisiana First Circuit. The court denied relief, finding that the state trial court's failure orally to include mention

of parole, probation or suspension of sentencing benefits in the sentence recitation could have no effect on what the applicable statutes <u>required</u> in La. Rev. Stat. §15:529.1(A)(1)(c)(ii) and §15:301.1(A); <u>i.e.</u>, that Landor's multiple offender sentence <u>must</u> be served <u>without</u> benefits of parole, probation or suspension. Thus, the minutes were statutorily correct. When later asserted in the Louisiana Supreme Court, no relief was granted as to this claim.

Landor's claim in this regard appears to assert a question of law, but it is <u>not</u> cognizable as a matter of law in this federal habeas proceeding. It is well settled that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>see also</u>, <u>Swarthout</u>, 131 S. Ct. at 861. Therefore, even if the state court written minutes and trial judge's oral recitation as reflected in the sentencing transcript should have been consistent under Louisiana law, or if the state trial court failed to comply with state sentencing rules, those are issues that this court need not and must not reach, because such ministerial errors are not correctable in a federal habeas corpus proceeding. <u>See</u>, <u>e.g.</u>, <u>Butler v. Cain</u>, 327 F. App'x 455, 457 (5th Cir. 2009) (claim that sentence violated state law is not cognizable in federal habeas proceeding.); <u>Haynes v. Butler</u>, 825 F.2d 921, 924 (5th Cir. 1987) ("... a state's failure to follow its own sentencing procedures is

not reviewable by federal habeas corpus.").  Landor is not entitled to federal habeas relief on this issue.

VIII.  MULTIPLE OFFENDER BILL AND ADJUDICATION (CLAIMS NOS. 6, 16)

Landor claims that the trial court erred by failing to quash the multiple offender bill filed against him.  Although not specifically briefed to this court, Landor addressed this claim on direct appeal in the state courts, arguing that Louisiana law prohibits the use of one of the predicate offenses which had previously been used against him to enhance a prior sentence.  He also argued during the state post-conviction proceedings that use of the same predicate offense placed him in double jeopardy and that the State failed to prove that he was the same person previously convicted to support his multiple offender adjudication.  The Louisiana Fifth Circuit denied relief, in part because Louisiana law did not prohibit the use of the same predicate offense to enhance separate habitual offender sentences. The Louisiana Supreme Court agreed.

As discussed above, Landor's claim under state law is not cognizable in this federal proceeding, Estelle, 502 U.S. at 67-68; Swarthout, 131 S. Ct. at 861.  For the following reasons, he is not entitled to habeas relief under federal constitutional law.

A double jeopardy claim presents a mixed question of law and fact for purposes of this court's federal habeas review.  Carlile v. Cockrell, 51 F. App'x 483, 2002 WL 31319380, at *1 (5th Cir. 2002), Johnson v. Karnes, 198 F.3d 589, 593 (6th Cir. 1999).

31

The United States Supreme Court has historically held that double jeopardy protections do not apply to sentencing proceedings.  Monge v. California, 524 U.S. 721, 727 (1992) (citing Bullington v. Missouri, 451 U.S. 430, 438 (1981) and Nichols v. United States, 511 U.S. 738, 747 (1994)).  Specifically, the Supreme Court held in Monge that an enhanced sentence is simply a heightened penalty for a habitual offender's latest conviction, not a second punishment for the prior offense.  Id. (citing Gryger v. Burke, 334 U.S. 728, 732 (1948) and Moore v. Missouri, 159 U.S. 673, 678 (1895)).  For similar reasons, the United States Fifth Circuit found no basis for the same double jeopardy argument asserted by Landor when it was made by another Louisiana prisoner years ago:

> We come now to [petitioner's] contention that the same prior conviction cannot be used to enhance two subsequent convictions.  [Petitioner] cites no case for this proposition, nor can we find any to support it.  Since double jeopardy principles are not offended by the use of a prior felony conviction to enhance punishment, Woodard [v. Beto, 447 F.2d 103 (5th Cir. 1971)]; Price v. Allgood, 369 F.2d 376 (5th Cir. 1966), cert. denied, 386 U.S. 998, 87 S. Ct. 1321, 18 L. Ed.2d 349 (1967) (upholding Louisiana statute), we see no logical reason why it should be impermissible to use the same prior conviction to enhance sentences on more than one subsequent conviction.  Another circuit has reached the same conclusion.  Montgomery v. Bordenkircher, 620 F.2d 127 (6th Cir.), cert. denied, 449 U.S. 857, 101 S. Ct. 155, 66 L. Ed.2d 71 (1980).  Such a restriction would greatly reduce the utility of tiered habitual offender statutes (where the sentence is enhanced to one degree for the second conviction, to another degree for the third, and so on), since a criminal who was convicted as a second offender could not then be convicted as a third offender until he had committed two more crimes.  We therefore see no reason, in logic or in law, to adopt [petitioner's] contention.

Sudds v. Maggio, 696 F.2d 415, 417-18 (5th Cir. 1983);  Bennett v. Little, 71 F.3d 879,

1995 WL 727392, at *3 (5th Cir. Nov. 22, 1995) (Table, Text in Westlaw); Duhr v.

Collins, 20 F.3d 469, 1994 WL 122213, at *5 (5th Cir. Mar. 29, 1994) (Table, Text in

Westlaw); Risley v. Quarterman, No. H-07-2081, 2008 WL 4327295, at *26 (S.D. Tex.

Sep. 16, 2008).  The Sudds reasoning and the decisions applying it remain binding and

persuasive.  Landor was not placed in double jeopardy and was instead properly given

an enhanced sentence for his latest conviction in accordance with Louisiana's habitual

offender laws.  He has not presented this court with a cognizable federal habeas claim.

    In addition, Landor has not established that the State failed to present sufficient

evidence to support his fourth offender adjudication.  His argument in this regard also

presents a mixed question of law and fact.  Taylor v. Day, No. 98-3190, 1999 WL

195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).

    To establish that a defendant is a habitual offender under La. Rev. Stat. § 15:529.1,

the State is required to prove the existence of a prior felony conviction and that the

defendant is the same person who was convicted of the prior felony.  State v. Shelton,

621 So.2d 769, 779 (La. 1993); State v. Staggers, 860 So.2d 174, 180 (La. App. 5th Cir.

2003).  Certified copies of court records evidencing prior convictions are sufficient to

prove the prior conviction.  Id.  Independent proof, such as matching fingerprints and

other vital information, is also required to show that the defendant is the same person

identified in the prior records.  State v. Walker, 795 So.2d 459, 463 (La. App. 5th Cir. 2001).

The Louisiana Supreme Court has held that, upon presentation of sufficient proof of identity and prior convictions, the burden shifts to the defendant to challenge the validity of the predicate convictions:

> If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea.  If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State.  The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers.  If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.

Shelton, 621 So.2d at 779-80 (footnotes omitted).

In this instance, Landor oddly claims that the State failed to produce evidence that he was the person actually convicted of manslaughter on May 28, 2009, in Case No. 423940 (the very case at issue in this habeas petition). He also denies having provided fingerprints after he was convicted of manslaughter.  He further claims that the State's expert never testified that he actually compared the fingerprints on the prior bills of

information with any fingerprints on the bill of information in the current manslaughter case, No. 423940.  The record clearly contradicts and undermines Landor's claims.

Before his multiple offender hearing, Landor was in fact fingerprinted in open court in connection with the multiple bill filed in the current manslaughter case, No. 423940.[49]  The technician compared those fingerprints with the fingerprints in the certified records of Landor's prior convictions.[50]  Deputy First Class Michael Futch, the State's expert in fingerprint identification, testified that he personally fingerprinted Landor in open court that day and reviewed the certified records of Landor's prior convictions.[51]  Deputy Futch specifically testified that, in his expert opinion, the fingerprints in the prior felony cases, Nos. 229654, 209114 and 281045, matched Landor's fingerprints taken before the hearing.[52]  He detailed exactly how he compared the new prints to those in the prior records.[53]  He also noted that the bill of information for the misdemeanor case, No. 229657, did not have comparison fingerprints.[54]  The court received the State's evidence, including the new fingerprint card and the certified records

---

[49]St. Rec. Vol. 5 of 13, Multiple Bill Hearing Transcript, p. 1096, 7/13/09.

[50]Id.

[51]Id., p. 1100.

[52]Id., pp. 1101-02.

[53]Id.

[54]Id., pp. 1100-01.

from each of the prior cases listed in the multiple bill.[55] The court also received a transcript excerpt from Landor's manslaughter trial in this case, No. 423940, in which he admitted to each of the prior convictions.[56]  The state court expressly found that Landor had been convicted of manslaughter on May 28, 2009.[57]

The record clearly establishes that Landor was properly identified as the person convicted of manslaughter and of the prior crimes listed in the multiple offender bill. Landor has presented <u>no</u> evidence, either then or now, that suggests any infringement of his rights or procedural irregularity in his prior guilty pleas that might render his enhanced sentence unconstitutional. Thus, Landor has failed to show that the state courts' decisions were contrary to established federal law.  He is not entitled to habeas relief on these claims.

## IX.   DEFECTIVE INDICTMENT/JURISDICTION (CLAIMS NOS. 8, 9, 10)

Landor asserts that the grand jury indictment was defective and did not provide the state trial court with subject matter jurisdiction because it did not include the essential elements of the charged offense and it was not returned by the grand jury in open court.

---

[55]<u>Id</u>., pp. 1103-04.

[56]<u>Id</u>., p. 1107.

[57]<u>Id</u>., p. 1108.

Landor was denied relief on these claims at each level of the state courts on post-conviction review.

As noted above, to the extent Landor's claims in this regard concern application of or compliance with state law, his claims are not cognizable in federal habeas corpus review. Swarthout, 131 S. Ct. at 861; Estelle, 502 U.S. at 67-68. Moreover, contrary to Landor's allegations, the state court record contains a minute entry clearly reflecting return of the indictment against Landor by the grand jury in open court on January 10, 2007, as required by La. Code Crim. P. art. 383,[58] with all twelve (12) grand jurors present. Landor's allegation in this regard is factually baseless and requires no further discussion.

Landor also argues that the indictment violated his due process rights because it was insufficient in content and form. A federal habeas corpus court may grant the writ on due process grounds only when state court errors make the underlying proceedings fundamentally unfair. Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986). The United States Court of Appeals for the Fifth Circuit, however, has declined to review claims alleging insufficient indictment forms because "[t]he sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction . . . [and] this can

---

[58] St. Rec. Vol. 1 of 13, Minute Entry, 1/10/07. Article 383 states in relevant part that "[i]ndictments shall be returned into the district court in open court . . . ."

be determined only by looking to the law of the state where the indictment was issued."
Alexander, 775 F.2d at 598 (citation and quotations omitted) (emphasis added); Evans
v. Cain, 577 F.3d 620, 624-25 (5th Cir. 2009); Davis v. Craig, 66 F.3d 319, 1995 WL
534730, at *3 (5th Cir. Jul. 25, 1995) (Table, Text in Westlaw).  Resolution of such an
issue on federal habeas review is precluded "[w]hen it appears . . . that the sufficiency
of the indictment was squarely presented to the highest court of the state on appeal, and
that court held that the trial court had jurisdiction over the case. . . ." Alexander, 775 F.2d
at 598 (quotation and citation omitted); Murphy v. Beto, 416 F.2d 98, 100 (5th Cir. 1969)
("[J]urisdiction to try an offense includes jurisdiction to determine whether the offense
is properly charged.").

Landor asserted his claim challenging the sufficiency of the indictment in the
Louisiana Supreme Court on post-conviction review.  In denying relief, the Louisiana
Supreme Court necessarily held that the state courts had jurisdiction and that the
indictment was sufficient under Louisiana state law.  See Ylst v. Nunnemaker, 501 U.S.
797, 802 (1991); Alexander, 775 F.2d at 599 ("By refusing to grant appellant relief . . .
the Texas Court of Criminal Appeals has necessarily, though not expressly, held that the
Texas courts have jurisdiction and that the indictment is sufficient for that purpose.")
The Louisiana Supreme Court has therefore had the opportunity to address Landor's

challenge to his indictment and has by clear inference determined that the indictment was proper. For this reason, federal review of this claim is prohibited.

Even if due process analysis is applied, however, Landor's claim fails. Claims asserting violation of due process rights present a mixed question of law and fact. Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000). Thus, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of federal law.

The United States Supreme Court has held that an indictment is sufficient if it both informs the defendant of the accusation against him, so as to enable him to prepare his defense, and affords him protection against double jeopardy. United States v. Debrow, 346 U.S. 374 (1953); United States v. Ramos, 537 F.3d 439, 459 (5th Cir. 2008). Sufficiency of a state court bill of information or indictment will not be reviewed by a federal habeas court under Section 2254, unless it can be shown that it is so defective that it deprives the convicting court of jurisdiction. McKay v. Collins, 12 F.3d 66, 68 (5th Cir. 1994); Alexander, 775 F.2d at 598).

The indictment in Landor's case provided in relevant part as follows:[59]

> The Grand Jurors of the State of Louisiana, duly empaneled and sworn in and for the body of the Parish of St. Tammany, in the name and by the authority of the said State, upon their oath, find and presents:

> (1)    NICKY LANDOR  DOB: 03/01/1974   SSN:[...]
>        28019 EA[S]T ORLEANS ST, LACOMBE, LA 70445-

> Late of the Parish of St. Tammany, on or about **the 4th day of October**, in the year of our Lord, two thousand and six, in the Parish of St. Tammany, and within the jurisdiction of the Twenty-second Judicial District Court of Louisiana, for the Parish of St. Tammany:

> COUNT 1
> R.S. 14:30.1 SECOND DEGREE MURDER, by killing Albert Marshall in the second degree.

> contrary to the form of the Statutes of the State of Louisiana in such cases made and provided, and against the peace and dignity of the same.

(emphasis in original) State Court Record, Volume 1 of 13, Indictment, January 10, 2007.

The indictment form used in Landor's case was specifically authorized by La.

Code Crim. P. art. 462[60] and 465(A)(32).[61]  This same indictment form has consistently

---

[59]La. Code Crim. P. art. 464 provides:
The indictment shall be a <u>plain, concise, and definite</u> written statement of the essential facts constituting the offense charged. <u>It shall state for each count the official or customary citation of the statute</u> which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice (emphasis added).

[60]The language of the short form indictment is provided for in La. Code Crim. P. art. 462:
The indictment by a grand jury may be in substantially the following form:  In the (Here state the name of the court.) on the ___ day of ____, 19__.  State of Louisiana v. A.B. (Here state the name or description of the accused.).

been found to provide the necessary due process protections required by federal law.  See

Gross v. Cain, No. 09-3353, 2010 WL 1552739, at *13-*15 (E.D. La. Mar. 11, 2010)

(addressing Louisiana short form indictment for second degree murder), report adopted,

2010 WL 1539743, at *1 (E.D. La. Apr. 14, 2010); Lindsey v. Cain, No. 05-1593, 2009

WL 1575466 at *12 (E.D. La. May 29, 2009) (order adopting report) (same); Brown v.

Cain, No. 99-2667, 2001 WL 96410, at *3 (E.D. La. Feb.2, 2001) (Schwartz, J.) (same);

see also, Liner v. Phelps, 731 F.2d 1201 (5th Cir. 1984) (addressing Louisiana short form

indictment for first degree murder).

   Landor's indictment provided notice of the specific statutory provision that he was

accused of violating, the identity of the victim and the date and venue of the killing.  This

was more than adequate information to apprise him of the crime with which he was

charged, second degree murder in violation of La. Rev. Stat. § 14:30.1, and to comply

---

The grand jury of the Parish of ___, charges that A.B. (Here state the name or description of the accused.) committed the offense of ___, in that (Here set forth the offense and transaction according to the rules stated in this Title. The particulars of the offense may be added with a view to avoiding the necessity for a bill of particulars.) contrary to the law of the State of Louisiana and against the peace and dignity of the same.

[61]La. Code Crim. P. art. 465(A)(32) provides the short form language for second degree murder:
A.  The following forms of charging offenses may be used, but any other forms authorized by this title may also be used:  [. . .]
32. Second Degree Murder--A.B. committed second degree murder of C.D.  [. . .]
B.  The indictment, in addition to the necessary averments of the appropriate specific form hereinbefore set forth, may also include a statement of additional facts pertaining to the offense charged.  If this is done it shall not affect the sufficiency of the specific indictment form authorized by this article.

41

with Louisiana law concerning indictment form.  The fact that other information pertaining to the offense was included in the language "shall not affect the sufficiency of the specific indictment form . . . ."  La. Code Crim P. art. 465(B).[62]  The state trial court therefore had a sufficient basis to exercise jurisdiction over Landor's criminal case.

The details provided in Landor's indictment comply with the test for constitutional sufficiency established by the Supreme Court.  The state courts' denial of relief was not contrary to or an unreasonable application of Supreme Court precedent.  Landor is not entitled to federal habeas corpus relief on these claims.

X.    DISTRIBUTION OF POWERS (CLAIM NO. 11)

Landor next argues that the St. Tammany Parish Sheriff's and District Attorney's Offices violated the "distribution of powers" set forth in the Louisiana Constitution. Construed broadly, this argument contends that the sheriff and the district attorney improperly interpreted the provisions of La. Rev. Stat. § 14:30.1 to charge him with second degree murder.  Landor argues that, as evidenced by the prosecutor's intent to use other crimes evidence at his trial, he was initially arrested as a felon in possession of a firearm, which was improperly used as a pretext to pursue the murder charge and eventually obtain the indictment and conviction against him.[63]  He argues that the sheriff

---

[62]See supra at n. 39.

[63]See, Rec. Doc. No. 1, p. 81, n. 50.

42

and the district attorney should not have used the felon in possession charge under La. Rev. Stat. § 14:95.1, or any evidence of that offense to obtain his conviction as if it were an element of second degree murder under La. Rev. Stat. § 14:30.1.  The state courts denied Landor relief during post-conviction review of this claim.

Once again, insofar as Landor argues violation of state constitutional or statutory law, no cognizable issue for federal habeas review is presented.  Swarthout, 131 S. Ct. at 861; Estelle, 502 U.S. at 67-68.  Even if Landor's contention that the State improperly used other crimes evidence (i.e., evidence of his being arrested as a felon in possession of a firearm, to obtain the indictment and his ultimate conviction for manslaughter) could somehow be construed as presenting a federal constitutional issue, Landor offers absolutely no factual basis to support this claim.

The record reflects that, after Landor was arrested and charged with second degree murder, the investigating detective obtained Landor's criminal history and determined that he had a prior felony conviction for possession with intent to distribute drugs.[64] Based on Landor's statements to detectives about why he fled with the murder weapon, the detective obtained a warrant for Landor's arrest under La. Rev. Stat. § 14:95.1 as a

---

[64]St. Rec. Vol. 1 of 13, Investigative Case Report, p. 14, 10/20/06; Arrest Warrant, 10/4/06.

previously convicted felon in possession of a weapon.[65]  The case was then presented to the district attorney's office for review.[66]

Thus, Landor was arrested by sheriff's detectives, separate and apart from the later murder charge, as a previously convicted felon in possession of a weapon.  Sheriff's deputies have authority under Louisiana law to make such arrests.  La. Rev. Stat. § 40:2402.  While the charge may have arisen from the admitted facts following the murder, there is no indication in the record that the murder arrest itself was based on Landor's prior criminal activity or his mere possession of the murder weapon.  In addition, as also appropriate under Louisiana law, information about the case was then forwarded to the district attorney's office for review and determination for possible prosecution:

> Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute.

La. Code Crim. P. art. 61.

The state court record does not reflect whether the felon in possession charge was accepted or billed by the district attorney against Landor.  The charge clearly was not included in Landor's grand jury indictment for second degree murder. Landor has

---

[65]Id., p. 15; St. Rec. Vol. 1 of 13, Arrest Warrant, 10/10/06.

[66]Id.

identified <u>no</u> due process or other constitutional violation in this regard.  In addition, he has shown no constitutional error in the admission of evidence related to his possession of the weapon. Federal habeas courts generally do not review the admissibility of evidence under state law.  <u>Estelle</u>, 502 U.S. at 67-68; <u>Gonzales v. Thaler</u>, 643 F.3d 425, 429 (5th Cir. 2011); <u>Jernigan v. Collins</u>, 980 F.2d 292, 298 (5th Cir. 1992).  The states are free to implement procedures regarding the admission and/or exclusion of evidence, provided those procedures do not infringe on a constitutional guarantee.  <u>Burgett v. Texas</u>, 389 U.S. 109, 113-14 (1967); <u>Williams v. Price</u>, 343 F.3d 223, 230 n.3 (3d Cir. 2003); <u>Pemberton v. Collins</u>, 991 F.2d 1218, 1223 (5th Cir. 1993); <u>Nees v. Culbertson</u>, 406 F.2d 621, 625 (5th Cir. 1969); <u>Tillman v. Thaler</u>, No. A-09-CA582-SS, 2010 WL 2731762, at *13 (W.D. Tex. July 9, 2010).

The question of whether evidence is constitutionally admitted or excluded is a mixed question of law and fact.  <u>Livingston v. Johnson</u>, 107 F.3d 297, 309 (5th Cir. 1997); <u>Tyson v. Trigg</u>, 883 F. Supp. 1213, 1218 (S.D. Ind. 1994), <u>aff'd</u>, 50 F.3d 436 (7th Cir. 1995).  Federal habeas corpus relief may be granted based on erroneous state evidentiary rulings only if the evidence at issue is "a crucial, critical, or highly significant factor in the context of the entire trial."  <u>Thomas v. Lynaugh</u>, 812 F.2d 225, 230 (5th Cir. 1987) (citations omitted); <u>accord</u> <u>Gonzales</u>, 643 F.3d at 430; <u>Wood v. Quarterman</u>, 503 F.3d 408, 414 (5th Cir. 2007).

In this case, Landor testified before the jury about his own criminal history and prior felony convictions.  His own testimony indicated that he left the scene of the murder with the weapon in his possession, hid it, then turned the weapon over to police when he surrendered.  His admitted use of the weapon to shoot the victim twice was the critical and crucial point, not that he was simply a felon in possession of a weapon.  As discussed above, Landor's own testimony about his flight with the murder weapon in his possession was admissible and relevant under Louisiana law to counter his assertion of self-defense.  There is no indication in the state court record that the felon in possession charge itself was used as an element of the second degree murder.

Landor has not established that the state courts' denial of relief on this issue was contrary to or an unreasonable application of Supreme Court law in this regard.  He is not entitled to relief on this claim.

## XI.  COPIES OF GRAND JURY TRANSCRIPTS AND EXHIBITS (CLAIM NO. 12)

Landor claims that he was denied access to grand jury transcripts and exhibits, which he needed to assist in proving that he was indicted based on the prosecutor's use of false and misleading information presented to the grand jury.  Landor again does not present a cognizable issue for federal habeas review based on his perceived rights under state law.  Swarthout, 131 S. Ct. at 861; Estelle, 502 U.S. at 67-68.

I note, nevertheless, that grand jury matters in Louisiana are secret, and transcripts of grand jury proceedings are not generally available to a defendant:[67]

> A defendant is generally not entitled to a grand jury transcript. La. Code Crim. Proc. art. 434; State v. Sheppard, 350 So.2d 615 (La. 1977). In an effort to balance the competing interests of Brady [v. Maryland, 373 U.S. 83 (1963)] and the secrecy of grand jury proceedings, the Louisiana Supreme Court has authorized an in camera inspection by the trial judge of a grand jury transcript. State v. Peters, 406 So.2d 189 (La. 1981). Disclosure after an in camera review for material to be disclosed under Brady and its progeny is in the sound discretion of the trial judge. State v. Trosclair, 443 So.2d 1098 (La. 1983), cert. dismissed, 468 U.S. 1205 (1984).

State v. Williams, 769 So.2d 629, 635 (La. App. 4th Cir. 2000). The state trial judge held a hearing on Landor's pro se motion requesting copies of the grand jury proceedings as required under Louisiana law.[68] After hearing argument directly from Landor, the court denied the motion, finding no basis to violate the sanctity of grand jury secrecy.

To the extent Landor suggests that the State presented false and misleading evidence to the grand jury and denied him access to the transcripts to withhold impeachment information, he is not entitled to federal habeas relief. First, Landor has not specified with any clarity what misconduct or allegedly false and misleading information he seeks to disclose or confirm from the grand jury proceedings. His

---

[67]See La. Code Crim. P. art. 434 (declaring grand jury proceedings to be secret).

[68]St. Rec. Vol. 3 of 13, Motion Hearing Transcript, 1/15/09.

arguments appear entirely speculative that something transpired before the grand jury about which the prosecutor should have advised his counsel.

As under Louisiana law, the United States Fifth Circuit Court of Appeals has applied the standards set in Brady v. Maryland, 373 U.S. 83 (1963), to address a habeas petitioner's claim that the State failed to disclose potentially exculpatory or impeachment evidence of false or inconsistent statements by refusing to produce grand jury transcripts. Castillo v. Johnson, 141 F.3d 218, 222 (5th Cir. 1998). The Brady materiality determination is a mixed question of law and fact. Cobb v. Thaler, 682 F.3d 364, 377 (5th Cir. 2012). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

In Brady, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. The duty to disclose this kind of evidence exists even though there has been no request by the defendant. Strickler v. Greene, 527 U.S. 263, 280 (1999) (citing United States v. Agurs, 427 U.S. 97, 107 (1976)). The prosecution's duty to disclose includes both exculpatory and impeachment

evidence.  Strickler, 527 U.S. at 280 (citing United States v. Bagley, 473 U.S. 667, 676 (1985)).

Brady claims involve "the discovery after trial of information which had been known to the prosecution but unknown to the defense." Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994) (quoting Agurs, 427 U.S. at 103).  Thus, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no Brady claim." United States v. Brown, 628 F.2d 471, 473 (5th Cir. 1980); see Kutzner v. Cockrell, 303 F.3d 333, 336 (5th Cir. 2002) (holding that Brady does not require prosecutors to furnish a defendant with exculpatory evidence if that evidence is fully available to the defendant through an exercise of reasonable diligence); Rector v. Johnson, 120 F.3d 551, 558-59 (5th Cir. 1997) (holding that the State has no duty to lead the defense toward potentially exculpatory evidence if the defendant possesses the evidence or can discover it through due diligence).  Brady also does not place any burden upon the prosecution to conduct a defendant's investigation or assist in the presentation of the defense's case.  United States v. Marrero, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted).

To prove a Brady violation, a defendant must establish that the evidence is favorable to the accused because it is exculpatory or impeachment, that the evidence was

suppressed by the State, and that prejudice resulted from the non-disclosure.  Banks v. Dretke, 540 U.S. 668, 691 (2004) (citing Strickler, 527 U.S. at 281-82).  However, "[t]he prosecution is not obliged to disclose impeachment evidence unless the evidence is 'favorable to the accused.'"  East v. Scott, 55 F.3d 996, 1005 (5th Cir. 1995).

Landor has not established that he was denied Brady material.  Landor concedes and the record demonstrates that he gave recorded inculpatory statements to detectives, confirming that he shot and killed Marshall, the murder for which he was charged by the grand jury.  He confirmed again the facts surrounding the killing during trial.  He has not alleged or established that the State withheld any evidence or witness statements that would fall within the parameters of Brady exculpatory or impeachment material.

Even if some such information existed, Landor has not established that anything from the grand jury proceedings had a prejudicial impact on the verdict at his trial.  The trial jury considered the testimony and evidence before it and the responsive verdicts and self-defense theory offered to them, without any influence by the secret proceedings of the grand jury.  The trial jury returned the responsive verdict of manslaughter based on fully sufficient evidence.  Landor has not alleged his post-trial discovery of anything new or material that would have affected that verdict.  Landor has not demonstrated a violation of Brady or any constitutional provision arising from the failure to provide him with a grand jury transcript.  The state courts' denial of relief was not contrary to or an

unreasonable application of Supreme Court law.  Landor is not entitled to relief on this claim.

XII.   <u>PRELIMINARY HEARING (CLAIM NO. 13)</u>

Landor complains that the state trial court denied him the preliminary hearing required by Louisiana law.  Again, violation of state law does not give rise to a federal claim under habeas review.  <u>Swarthout</u>, 131 S. Ct. at 861; <u>Estelle</u>, 502 U.S. at 67-68.  It is noteworthy, however, that in Louisiana, a probable cause hearing is <u>not</u> indicated for a person like Landor who is arrested through the issuance of an arrest warrant.  <u>State v. Hughart</u>, 801 So.2d 388, 389 (La. App. 2d Cir. 2000) (discussing the hearing requirement under La. Code Crim. P. art. 230.2 for those arrested with<u>out</u> a warrant).

Similarly, federal law provides that "a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not <u>constitutionally</u> entitled to a separate judicial determination that there is probable cause to detain him pending trial." <u>Baker v. McCollan</u>, 443 U.S. 137, 143 (1979) (emphasis added).  The probable cause determination made before issuance of an arrest or search warrant is sufficient to satisfy federal law.  <u>See</u> <u>Baker</u>, 443 U.S. at 143 ("[S]ince the probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate

judicial determination that there is probable cause to detain him pending trial."); <u>Harris v. Payne</u>, 254 F. App'x 410, 418 (5th Cir. 2007).

The United States Constitution does not guarantee a preliminary hearing before a grand jury indictment is issued.  <u>See</u> <u>Siwakowski v. Beto</u>, 455 F.2d 915, 916 (5th Cir. 1972) (per curiam) (holding referral of case to grand jury without an examining trial was constitutionally permissible).  Instead, grand jury indictment constitutes a final determination of the existence of probable cause in a criminal case.  <u>See</u> <u>Gerstein v. Pugh</u>, 420 U.S. 103, 117 n.19 (1975) (indictment "conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry"); <u>In re Grand Jury Subpoena Dated Dec. 17, 1996</u>, 148 F.3d 487, 493 (5th Cir. 1998) ("In returning ... an indictment a grand jury indicates that it has found probable cause to believe that a criminal offense has occurred .").

The record in this case shows that detectives obtained an arrest warrant before taking Landor into custody and that he was subsequently indicted.  Thus, Landor was not entitled to a preliminary hearing, under either state or federal constitutional law.  He has failed to present a cognizable federal claim or establish that the denial of relief was contrary to the Supreme Court precedent cited above.  Landor is not entitled to federal habeas relief on this claim.

XIII.   <u>NO REASONS FOR DENIAL OF COPIES (CLAIM NO. 14)</u>

Landor argues that the state trial court and the district attorney denied him due process in failing to provide reasons for denying his request for records needed to prove that he received disparate treatment from the prosecutor.  Landor contends that a woman he identifies as Maya Cook was not indicted by a grand jury under facts similar to those in his case.  He claims that Cook stabbed her father with a knife she retrieved after her father attacked her. He further claims that Cook was only charged with negligent homicide and the grand jury returned a "no bill."  He suggests that the facts of his case were more egregious than Cook's, because he was hit, shot at, and made to fight for his life, but he nevertheless was charged with and indicted for second degree murder. Landor claims that the state trial court acted unreasonably by its one-word denial of his motion to obtain copies of Cook's criminal case records.

Once again, this federal court does "not sit as [a] 'super' state supreme court" to review the reasonableness of a lower state court's ruling on a document request. <u>Wilkerson</u>, 16 F.3d at 67; <u>Swarthout</u>, 131 S. Ct. at 861.  Landor's claim is based on the state trial court's failure to provide reasons for denying his motion to obtain the Cook criminal case records.  I have located no state law requirement that written reasons must be provided to support such a court ruling, and Landor has cited none.

More importantly, Landor's argument asserts <u>no</u> federal constitutional claim cognizable on habeas review. Although Landor clearly would have preferred a detailed explanation as to why his motion was rejected by the state trial court, the federal constitution does not require that any court satisfy such desires. On the contrary, federal law does not require reasoned or written judicial opinions. See, <u>e.g.</u>, <u>Taylor v. McKeithen</u>, 407 U.S. 191, 194 n.4 (1972); <u>White v. Scott</u>, No. 97-6258, 1998 WL 165162, at *1 (10th Cir. Apr. 9, 1998); <u>King v. Champion</u>, 55 F.3d 522, 526 (10th Cir. 1995); <u>Furman v. United States</u>, 720 F.2d 263, 264 (2nd Cir. 1983); <u>United States v. Baynes</u>, 548 F.2d 481 (3rd Cir. 1977); <u>Jones v. United States</u>, No. 88CIV3999, 1990 WL 6566, at *3 (S.D.N.Y. Jan. 24, 1990).

The administration of justice is rarely perfect, and all actions of state courts do not involve due process. Due process concerns are implicated only when the State fails to assure a criminal defendant adequate notice of the charges and an opportunity to present his claims before final determination on the merits. <u>Evitts v. Lucey</u>, 469 U.S. 387, 401, 405 (1985). That is not the case here. Landor does not contend and has not shown that he was denied adequate review of the state trial court's ruling on this motion under either state or federal law. Having failed to present a cognizable federal claim or to show that the decisions or actions of the state courts were contrary to or an unreasonable application of any federal law, Landor is not entitled to relief on this claim.

54

## XIV.   DENIAL OF REQUEST FOR STAY (CLAIM NO. 15)

Landor also argues that the state trial court erred and violated his constitutional rights by denying his request to stay the proceedings while he pursued review of the denial of his pro se request to inspect the grand jury proceedings.  He contends that, while the matter was on supervisory review, the trial court was divested of jurisdiction under La. Code Crim. P. art. 916, yet still proceeded to trial.  Landor's request for post-conviction relief on this issue was denied by the state courts.

This court does not sit to address the reasonableness under state law of a lower state court's discretionary ruling.  Wilkerson, 16 F.3d at 67; Swarthout, 131 S. Ct. at 861. Landor has failed to establish that the denial of the stay violated his constitutional rights or rendered his state criminal proceedings fundamentally unfair.  As noted above, a due process question is a mixed question of law and fact for purposes of federal habeas review.

Landor contends that the state trial court's error flows from La. Code Crim. P. art. 916, which provides that the trial court generally loses jurisdiction over a matter pending appeal.  Landor seems to equate his application for a writ of review with a direct appeal. Louisiana law, however, distinguishes those proceedings.  Specifically, under La. Code Crim. P. art. 912, the denial of a motion to stay is not an appealable matter; thus, La. Code Crim. P. art. 916 did not on its face apply to Landor's situation.  Landor, therefore,

55

has identified no legal error in the state trial court's ruling that might even conceivably constitute a due process violation.  Landor once again has failed to present a cognizable issue for federal habeas review.  He is not entitled to relief on this claim.

## XV.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIMS NOS. 17, 18)

Landor claims that he was denied effective assistance of counsel when his trial and sentencing counsel failed to (a) assist him with his pro se motions, (b) file a motion to quash the defective indictment, (c) file a motion to quash on grounds that the indictment was not returned in open court, (d) appear at the initial arraignment, (e) file certain motions, (f) call expert witnesses, (g) provide him with the file after withdrawing, (h) object to the jury instructions, (i) investigate before the multiple bill hearing, and (j) object to the State's evidence at the multiple bill hearing.  Landor also contends that his appellate counsel provided ineffective assistance by failing to include each of the previously asserted state court post-conviction claims on direct appeal.  Finally, he alleges that he was denied effective assistance of counsel by the cumulative errors of all counsel.  The state courts denied Landor's requests for post-conviction relief on these claims without stated reasons.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010).  Thus, the question before this court is whether the state courts' denial

of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 688 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Id., 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington v. Richter, __ U.S. __, 131 S. Ct. 770,

792 (2011) (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom."  Harrington, 131 S. Ct. at 788.  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen, 131 S. Ct. at 1403 (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner.  Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore, 194 F.3d at 591.  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector, 120 F.3d at 564 and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

Landor claims that his counsel failed to assist him with his many pro se motions, but he provides no explanation as to what assistance counsel should have offered in connection with any particular motion.  The record reflects that, at a motion hearing held on October 12, 2007, Landor's then retained counsel, Martin E. Regan Jr., made the following representation to the court regarding Landor's pro se motion to quash the grand jury indictment:

MR. REGAN:

My client is working as a jail-type lawyer research at this point. And he was convinced - - in fact, he was hopeful that there would be no indictment in this case.

I'm just going to put this on the Record, and I think you will agree with me. He thought it was such a clear-cut case of self-defense with the eyewitnesses that there should not have been an indictment to begin with.

And he was very disappointed when he was ultimately indicted in what he considers a clear self-defense matter.

So, with that, I've researched that, I've looked at it, and obviously there is a grand jury indictment, there was a grand jury that agreed that there was enough evidence to go forward to trial. And that's where we are today.[69]

Similarly, at a motion hearing held on January 15, 2009, his then appointed counsel, David F. Craig Jr., assisted Landor in introducing his pro se motion to quash the grand jury indictment to the court and in laying the legal groundwork for it.[70] In both instances, however, the state trial court denied Landor's pro se motions as meritless.

Thus, the record reflects that counsel in fact assisted Landor in submitting pro se motions to the trial court. His pro se motions were uniformly baseless. He has not shown that his counsel was deficient or acted in any manner that was prejudicial to him in this regard. He is not entitled to relief on this claim.

Landor also argues that his counsel provided ineffective assistance by failing to file "certain motions." He separately alleges that his counsel failed to file a motion to

---

[69] St. Rec. Vol. 3 of 13, Motion Hearing Transcript, p. 6, 10/12/07.

[70] St. Rec. Vol. 3 of 13, Motion Hearing Transcript, p. 621-22, 1/15/09.

quash the grand jury indictment based on its defective content and form and because it was not returned in open court.

As to Landor's claims that his counsel failed to file "certain motions," he has not identified any particular unfiled motions, other than the motion to quash the grand jury indictment.  Having specified no other motions that should have been filed, he fails to state a claim subject to this court's review.  See Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); United States v. Daniels, No. 08-104, 2011 WL 999529, at *7 (E.D. La. Mar. 18, 2011) (citing Moawad, 143 F.3d at 948; Brown, 419 F.3d at 375; Kron v. Tanner, No. 09-7572, 2010 WL 3488227, at *11 n.26 (E.D. La. May 4, 2010)), report adopted, 2010 WL 3470465, at *1 (E.D. La. Aug. 30, 2010).

As discussed above, the grand jury indictment in Landor's case was not defective under either Louisiana or federal law.  In addition, the record establishes that the grand jury indictment was in fact returned in open court on January 10, 2007.[71]  Landor's pro se motions based on these grounds were denied by the state trial court as meritless. Landor has shown no reason why counsel should have repeated or pursued the filing of

---

[71]St. Rec. Vol. 1 of 13, Minute Entry, 1/10/07.

meritless motions. See Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); see also, Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections.").

For the foregoing reasons, Landor has not established that his counsel acted in a deficient or prejudicial manner in failing to file meritless or unspecified motions. Landor is not entitled to relief on this claim.

Landor also contends that his counsel provided ineffective assistance when he failed to appear at the initial arraignment on the grand jury indictment. The Supreme Court has explained that the Sixth Amendment right to counsel at critical stages of a criminal proceeding includes the right to counsel at an arraignment. Missouri v. Frye, __ U.S. __, 132 S. Ct. 1399, 1405 (2012).

The record reflects that Landor appeared for arraignment on the grand jury indictment on February 12, 2007.[72] His retained counsel at that time, Martin Regan, was not present. Instead, Landor's assigned indigent defender, David Craig, stood in for Regan, waived the reading of the indictment and entered a plea of not guilty for Landor. Landor, therefore, was in fact represented by counsel at the arraignment.

---

[72]St. Rec. Vol. 1 of 13, Minute Entry, 2/12/07.

While the record offers no explanation for Regan's absence, Landor was provided with the assistance of counsel before his not-guilty plea was entered.  In fact, Craig eventually became Landor's trial attorney, after Landor forced Regan to withdraw from the case.  Landor has urged no complaints about Craig's representation at the initial arraignment, and I discern none.  Landor therefore has failed to allege any prejudice arising from Regan's absence or Craig's performance at the arraignment, and he is not entitled to relief on this claim.

Landor further contends that his trial counsel provided ineffective assistance when he failed to call expert witnesses.  Landor provides no specific explanation of what experts he suggests counsel should have consulted or called to testify. Without some sort of factual support for this claim or explanation why expert testimony was necessary, he has not demonstrated any constitutional deficiency in counsel's decision not to call such witnesses.  See Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (rejecting ineffective assistance of counsel claim where petitioner "did not present any evidence or allegations concerning what the expert would have stated, or what results the scientific tests would have yielded").  Nevertheless, affording Landor the broadest reading of his prolix petition, even if he argues that counsel should have called an expert witness to support his self-defense theory or any other facet of his case, he has not met the Strickland test.

On federal habeas corpus review, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)); Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008).  To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.  Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citing Bray, 265 F. App'x at 298).  The Fifth Circuit has "required this showing for claims regarding uncalled lay and expert witnesses alike."  Day, 566 F.3d at 538 (citing Evans, 285 F.3d at 377-78).  The Fifth Circuit has "clarified that the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'"  Hooks v. Thaler, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting Woodfox, 609 F.3d at 808).  Instead, the Fifth Circuit requires the showing "as part of the burden of proving that trial counsel could have found and presented a favorable expert."  Id. at 83 (citation omitted).

As stated above, Landor has met none of the foregoing requirements necessary to assert such a claim.  He has not identified any expert or any proposed expert testimony

or explained how any such expert opinion might have been favorable to his defense. He has wholly failed to establish any deficient or prejudicial action by his trial counsel in this regard and is not entitled to relief on this claim.

Landor also contends that his prior counsel, Regan, prejudiced his defense when he failed to turn over the case file to Landor after Regan withdrew from the case before trial. Landor has presented no factual support for his claim, and I can find none in the record.

On the contrary, the record reflects that, at a hearing held on April 16, 2008, the state trial court granted Landor's pro se motion to have his retained counsel, Regan, removed from the case.[73]  At that same hearing, Regan stated to the court that he would provide Landor's apponted public defender, Craig, with the case materials.[74]  The record contains no indication that Regan did not provide the necessary documents to Craig in a timely and complete manner.  Having again failed to establish a factual basis for this claim or any prejudice resulting from any action by Regan, Landor is not entitled to relief.

As with so many of his other arguments, Landor fails to present any argument or specific details to support his wholly conclusory allegation that his counsel was

---

[73]St. Rec. Vol. 3 of 13, Motion Hearing Transcript, p. 617, 4/16/08.

[74]Id., p. 618.

ineffective in failing to object to the jury instructions.[75]  Without some specific allegation of ineffectiveness for this court to review, Landor cannot demonstrate that he is entitled to federal habeas corpus relief.  Green, 160 F.3d at 1042; Brown, 419 F.3d at 375.

The state court record reflects that the trial court held a jury charge conference with counsel, and no objections were made by either the prosecution or the defense.[76] The record contains no indication that there was anything in the proposed instructions reviewed during the conference that might have provided some basis for a non-frivolous objection.  However, during the reading of the instructions to the jury by the trial judge, defense counsel in fact interrupted the trial court to correct an oral misstatement made by the court in the definition of justifiable homicide/self-defense.[77]

Based on counsel's successful notice to the court on that issue, the record demonstrates that defense counsel was in fact aware of the charges and closely concerned with their accuracy. Landor has not pointed to any error or deficiency in counsel's scrutiny of the jury instructions.  He is not entitled to relief on this claim.

Landor also contends that his counsel did not adequately investigate or challenge the multiple offender proceedings against him.  In this wholly conclusory allegation,

---

[75]Rec. Doc. No. 1, p. 53.

[76]St. Rec. Vol. 5 of 13, Trial Transcript, p. 1031, 5/28/09.

[77]Id., p. 1065.

Landor again fails to present any argument or specific details sufficient to state a claim.[78] <u>Green</u>, 160 F.3d at 1042; <u>Brown</u>, 419 F.3d at 375.  Thus, Landor is not entitled to relief on this issue.

Even if the court were to consider this claim, he cannot meet the <u>Strickland</u> test. "'A defendant who alleges a failure to investigate on the part of his counsel must allege <u>with</u> <u>specificity</u> what the investigation would have revealed and how it would have altered the outcome of the trial.'" (emphasis added, citation omitted) <u>Moawad</u>, 143 F.3d at 948; <u>Druery v. Thaler</u>, 647 F.3d 535, 541 (5th Cir. 2011).  A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without expressly adducing what the investigation would have shown.  <u>Diaz v. Quarterman</u>, 239 F. App'x 886, 890 (5th Cir. 2007) (citing <u>Strickland</u>, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  Rather, to prevail on such claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed.  <u>Moawad</u>, 143 F.3d at 948; <u>Brown</u>, 419 F.3d at 375; <u>Davis v. Cain</u>, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

---

[78]Rec. Doc. No. 1, p. 53.

In this case, as noted above, Landor admitted to his own criminal history and prior felony convictions at trial, all of which was testimony Landor provided against the advice of his trial counsel.[79]  His sworn admission was then properly used against him at the multiple offender hearing, leaving nothing for his counsel to challenge.  Moreover, contrary to Landor's allegations, the record reflects that his counsel at that time, Craig, in fact investigated and challenged the multiple offender bill.  Craig filed an answer to the multiple bill, including a request that it be quashed.[80]  The defense pleading included challenges to the authenticity of the records to be presented, the timeliness of the underlying charges and the bill itself.

At the multiple offender hearing held on July 13, 2009, Landor had Craig removed from the case, and another public defender, John Lindner, was appointed to represent him.[81]  The record shows that new counsel objected to the fingerprinting on behalf of Landor and thoroughly questioned the State's fingerprint expert regarding the comparisons made and the records upon which he relied.[82]  As discussed above, the State also introduced Landor's trial testimony, in which he admitted his prior criminal history. After the court's ruling, counsel requested clarification for the record of the assertion that

---

[79]Id., pp. 1087-88, 1091-1095.

[80]St. Rec. Vol. 3 of 13, Answer and Motion to Quash, 6/3/09.

[81]St. Rec. Vol. 5 of 13, Multiple Bill Hearing Transcript, pp. 1089-91, 1096, 7/13/09.

[82]Id., pp. 1098-99, 1104-06.

Landor was receiving a mandatory life sentence.[83]  He also filed motions to reconsider the sentence, arguing unconstitutionality and excessiveness, which the state trial court denied.[84]

Landor has not established that either of his counsel, Craig or Lindner, could have discovered any other matters with additional investigation or that either of them failed adequately to challenge the multiple offender bill and the evidence presented at the hearing.  He is not entitled to relief on this claim.

Landor alleges that his appellate counsel was ineffective in failing to assert on direct appeal each of the claims he raised in his state post-conviction application, which includes all of the claims presented here. Landor again has failed to identify any deficient performance by his appellate counsel.

Persons convicted of a crime are entitled to effective assistance of counsel in their first appeal of right.  Evitts, 469 U.S. at 394.  The Strickland standard for judging performance of counsel also applies to claims of ineffective appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285 (2000); Goodwin v. Johnson, 132 F.3d 162, 170 (5th Cir. 1997).  To prevail on a claim that appellate counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert

---

[83]Id., pp. 1109-10.

[84]St. Rec. Vol. 3 of 13, Motion to Reconsider, 7/22/09; Trial Court Order, 8/13/09; Motion to Reconsider (2), 7/22/09; Trial Court Order (2), 8/13/09.

a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); Smith, 528 U.S. at 285-86.

In addition, effective appellate counsel are not required to assert every nonfrivolous available ground for appeal.  Green, 160 F.3d at 1043) (citing Evitts, 469 U.S. at 394).  On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue every nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail.  See Anderson v. Quarterman, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal . . . lack merit.  As such, failure to raise these issues did not prejudice Anderson."); Penson v. Ohio, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); Kossie v. Thaler, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised).  Thus, because one of appellate counsel's important duties is to

70

focus on those arguments that are most likely to succeed, counsel will not be found constitutionally ineffective for failure to raise every conceivable issue.  Smith, 528 U.S. at 288;  Jones, 463 U.S. at 754.

Having reviewed all of Landor's claims, and for all of the reasons discussed above, I find that this record contains no non-frivolous claim that should have been raised by Landor's appellate counsel.  Any such argument clearly would have lacked merit, as they did on post-conviction review.  Counsel's failure to assert these baseless issues on direct appeal cannot be deemed either deficient performance or prejudicial, since there was no reasonable probability that these arguments would have prevailed on appeal. Accordingly, Landor is not entitled to federal habeas corpus relief on this claim.

Landor argues finally that the combined errors of his various counsel created cumulative prejudice before, at and after his trial.  For the reasons discussed above, Landor has failed to identify any constitutional error in the performance of any one of his attorneys, leaving no basis for any alleged cumulative prejudicial effect of any error.  See Turner v. Quarterman, 481 F.3d 292, 301 (5th Cir. 2007) (citing Derden v. McNeel, 978 F.2d 1453, 1454, 1461 (5th Cir. 1992) (meritless claims or claims that are not prejudicial cannot be cumulated regardless of the total number raised)). When individual contentions of ineffective assistance are meritless, that result cannot be changed simply by asserting the same claims collectively.  "[I]neffective assistance of counsel cannot be created from

the accumulation of acceptable decisions and actions." United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006) (citing Miller, 200 F.3d at 286 n.6); Sholes v. Cain, 370 F. App'x 531, 535 (5th Cir. 2010); Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) (with respect to cumulation of meritless claims, "Twenty times zero equals zero.").

For all of the foregoing reasons, Landor has presented no adequate claim under either prong of the Strickland test, and the state courts' denial of relief of his many baseless arguments of ineffective assistance of counsel was not contrary to or an unreasonable application of Strickland. Landor is not entitled to relief as to any part of his claim of ineffective assistance of counsel.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Landor's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[85]

New Orleans, Louisiana, this _____30th_____ day of April, 2014.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[85]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.